FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Mar 05, 2020

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

CYNTHIA A., )
          Plaintiff, ) No. 1:19-CV-03145-LRS
vs. ) **ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT,** *INTER ALIA*
COMMISSIONER OF SOCIAL SECURITY, )
          Defendant. )
_____ )

**BEFORE THE COURT** are the Plaintiff's Motion For Summary Judgment (ECF No. 13) and the Defendant's Motion For Summary Judgment (ECF No. 14).

## JURISDICTION

Cynthia A., Plaintiff, applied for Title II Social Security Disability Insurance benefits (SSDI) and Title XVI Supplemental Security Income benefits (SSI) on March 4, 2016. The applications were denied initially and on reconsideration. Plaintiff timely requested a hearing which was held on February 6, 2018, before Administrative Law Judge (ALJ) Ilene Sloan. Plaintiff testified at the hearing, as did Vocational Expert (VE) Kimberly Mullinax. On May 30, 2018, the ALJ issued a decision finding the Plaintiff not disabled. The Appeals Council denied a request for review of the ALJ's decision, making that decision the Commissioner's final decision subject to judicial review. The Commissioner's final decision is appealable to district court pursuant to 42 U.S.C. §405(g) and §1383(c)(3).

**ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT- 1**

## STATEMENT OF FACTS

The facts have been presented in the administrative transcript, the ALJ's decision, the Plaintiff's and Defendant's briefs, and will only be summarized here. Plaintiff has a high school education and past relevant work experience as a home attendant, kiln operator, child monitor, nursery school attendant, and deliverer (merchandise). She alleges disability since November 30, 2015, on which date she was 37 years old. Plaintiff's date last insured for Title II SSDI benefits is December 31, 2020.

## STANDARD OF REVIEW

"The [Commissioner's] determination that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence...." *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983). Substantial evidence is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975), but less than a preponderance. *McAllister v. Sullivan*, 888 F.2d 599, 601-602 (9th Cir. 1989); *Desrosiers v. Secretary of Health and Human Services*, 846 F.2d 573, 576 (9th Cir. 1988). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420 (1971). "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld. *Beane v. Richardson*, 457 F.2d 758, 759 (9th Cir. 1972); *Mark v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965). On review, the court considers the record as a whole, not just the evidence supporting the decision of the Commissioner. *Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Cir. 1989); *Thompson v. Schweiker*, 665 F.2d 936, 939 (9th Cir. 1982).

It is the role of the trier of fact, not this court to resolve conflicts in evidence. *Richardson*, 402 U.S. at 400. If evidence supports more than one rational interpretation, the court must uphold the decision of the ALJ. *Allen v. Heckler*, 749

**ORDER GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT- 2**

F.2d 577, 579 (9th Cir. 1984).

A decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1987).

## ISSUES

Plaintiff argues the ALJ erred in: 1) improperly rejecting medical opinions from Plaintiff's treating medical providers; 2) failing to provide specific, clear and convincing reasons for discounting Plaintiff's testimony regarding her symptoms and limitations; and 3) improperly rejecting lay witness observations of Plaintiff's roommate.

## DISCUSSION
**SEQUENTIAL EVALUATION PROCESS**

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A) and § 1382c(a)(3)(A). The Act also provides that a claimant shall be determined to be under a disability only if her impairments are of such severity that the claimant is not only unable to do her previous work but cannot, considering her age, education and work experiences, engage in any other substantial gainful work which exists in the national economy. *Id*.

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520 and 416.920;

**ORDER GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT- 3**

*Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S.Ct. 2287 (1987). Step one determines if she is engaged in substantial gainful activities. If she is, benefits are denied. 20 C.F.R. §§ 404.1520(a)(4)(i) and 416.920(a)(4)(i). If she is not, the decision-maker proceeds to step two, which determines whether the claimant has a medically severe impairment or combination of impairments. 20 C.F.R. §§ 404.1520(a)(4)(ii) and 416.920(a)(4)(ii). If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied. If the impairment is severe, the evaluation proceeds to the third step, which compares the claimant's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii) and 416.920(a)(4)(iii); 20 C.F.R. § 404 Subpart P, App. 1. If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step which determines whether the impairment prevents the claimant from performing work she has performed in the past. If the claimant is able to perform her previous work, she is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv) and 416.920(a)(4)(iv). If the claimant cannot perform this work, the fifth and final step in the process determines whether she is able to perform other work in the national economy in view of her age, education and work experience. 20 C.F.R. §§ 404.1520(a)(4)(v) and 416.920(a)(4)(v).

The initial burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971). The initial burden is met once a claimant establishes that a physical or mental impairment prevents her from engaging in her previous occupation. The burden then shifts to the Commissioner to show (1) that the claimant can perform other substantial gainful activity and (2) that a "significant number of jobs exist in the national economy" which claimant can perform. *Kail v. Heckler*, 722 F.2d 1496,

**ORDER GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT- 4**

1498 (9th Cir. 1984).

**ALJ'S FINDINGS**

The ALJ found the following:

1) Plaintiff has "severe" medically determinable impairments including systemic lupus erythematosis ((SLE/lupus); mild lumbar spine spondylosis; mild carpal tunnel syndrome (CTS); and bilateral fibromyalgia;

2) Plaintiff's impairments do not meet or equal any of the impairments listed in 20 C.F.R. § 404 Subpart P, App. 1;

3) Plaintiff has the Residual Functional Capacity (RFC) to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b)[1], except she is limited to only occasional climbing of ladders/ropes/scaffolds; no more than frequent climbing of ramps/stairs; no more than frequent balancing, stooping, kneeling, crouching, and crawling; and no more than frequent handling, fingering, and feeling. She is capable of occasional superficial contact with the general public, is able to have routine contact with coworkers and supervisors, and will be off task approximately five percent of the work period;

4) Plaintiff's RFC allows her to perform her past relevant work as a kiln operator;

5) Alternatively, it allows her to perform other jobs existing in significant numbers in the national economy, including Cleaner-Housekeeping, Assembler-

---

[1] "Light" work is defined as involving lifting no more than 20 pounds, with frequent lifting and carrying of objects weighing up to 10 pounds. It may require a good deal of walking or standing, or sitting most of the time with some pushing or pulling of arm or leg controls.

Production, and Deliverer-Outside.

Accordingly, the ALJ concluded that Plaintiff is not disabled.

**MEDICAL OPINIONS**

It is settled law in the Ninth Circuit that in a disability proceeding, the opinion of a licensed treating or examining physician or psychologist is given special weight because of his/her familiarity with the claimant and his/her condition. If the treating or examining physician's or psychologist's opinion is not contradicted, it can be rejected only for clear and convincing reasons. *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). If contradicted, the ALJ may reject the opinion if specific, legitimate reasons that are supported by substantial evidence are given. *Id*. "[W]hen evaluating conflicting medical opinions, an ALJ need not accept the opinion of a doctor if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). The opinion of a non-examining medical advisor/expert need not be discounted and may serve as substantial evidence when it is supported by other evidence in the record and consistent with the other evidence. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995).

Nurse practitioners, physicians' assistants, and therapists (physical and mental health) are not "acceptable medical sources" for the purpose of establishing if a claimant has a medically determinable impairment. 20 C.F.R. §§ 404.1513(a); 416.913(a). Their opinions are, however, relevant to show the severity of an impairment and how it affects a claimant's ability to work. 20 C.F.R. §§ 404.1513(d); 416.913(d). In order to discount the opinion of a non-acceptable medical source, the ALJ must offer germane reasons for doing so. *Turner v. Comm'r of Soc. Sec.*, 613

**ORDER GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT- 6**

F.3d 1217, 1224 (9th Cir. 2010).[2]

A. **Physical Impairments**

The ALJ accorded significant weight to the August 20, 2016 opinion of Howard Platter, M.D., a state agency medical consultant who reviewed the medical record and opined Plaintiff was capable of performing "light" level work with some non-exertional limitations. (AR at p. 30). The ALJ noted that her RFC assessment fell within the range of exertion opined by Dr. Platter and found his opinion was internally consistent and "consistent with the medical evidence of record (e.g., clinically stable/controlled lupus and mild stable lumbar spondylosis with normal strength and sensation on exam)." (*Id.*). The ALJ further found the assessment that Plaintiff was capable of light level work was consistent with Plaintiff's "reported range of activities/demonstrated functioning . . . (e.g., manages activities of daily living, personal care/hygiene, meals, household chores, driving, shopping, taking walks, exercising at treatment; social activities)." (*Id.*).

In July 2016, Jeremiah Crank, M.D., of Yakima Neighborhood Health Services (YNHS) completed on Plaintiff's behalf a Washington State Department of Social and Health Services (DSHS) "Physical Functional Evaluation" form. He opined that Plaintiff's lupus constituted a "moderate" impairment (significant interference with ability to perform one or more work-related activities) and her "lumbar" strain constituted a "marked" impairment (very significant interference with ability to perform one or more work-related activities). (AR at p. 629). He opined that Plaintiff was capable of performing "sedentary" work (lift 10 pounds maximum and frequently lift or carry lightweight articles; able to walk or stand for only brief periods). (AR at

---

[2] For claims filed on or after March 27, 2017, physician assistants are now considered "acceptable medical sources." 82 Fed. Reg. 5844 (Jan. 18, 2017).

**ORDER GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT- 7**

p. 630). A "Range Of Joint Motion Evaluation Chart" completed by Dr. Crank accompanied the evaluation form. (AR at pp. 631-32).

The ALJ gave "little" weight to Dr. Crank's opinion because "he provided little support for the degree of limitation opined other than noting the claimant's diagnosed conditions . . . and reported complaints/symptoms 'joint pain especially bilateral knees due to lupus also lower back pain' and some limited range of motion;" he noted Plaintiff "would need additional testing including possible neurosurgeon referral and injection;" and his opinion was not "consistent with the objective medical evidence." (AR at p. 31). According to the ALJ, Plaintiff's lumbar spondylosis was "mild" and her treating rheumatologist (J. Carlin, M.D.) indicated her lupus was "clinically stable, treated with disease modifying agents and does not explain the severe joint pains she alleges." (*Id.*).

James W. Beck, M.D., also with YNHS, completed a DSHS "Physical Functional Evaluation" report and "Range Of Joint Motion Evaluation Chart" on Plaintiff's behalf on May 5, 2017. He opined Plaintiff's lupus was "severe" in that it rendered her unable to perform one or more basic work-related activities. (AR at p. 643). Dr. Beck's other diagnosis was "depression" due to Plaintiff's lupus which he labeled a "marked" impairment. (*Id.*). Dr. Beck did not include "lumbar strain" among his diagnoses. Dr. Beck checked a box indicating Plaintiff was "severely limited" in that she was unable to meet the demands of even sedentary work. (AR at p. 644).

The ALJ gave Dr. Beck's opinion "little" weight "as this statement provides little evidence of clinical findings to support the degree of disability assessed, other than listing the claimant's diagnoses and symptoms, such as low energy, increased pain and swelling in hands/feet and knees and increased frequency of flare-ups requiring 'bed rest.'" (AR at p. 31). According to the ALJ: "[T]he findings of extreme limitations are not consistent with the overall medical record . . . which

**ORDER GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT- 8**

reflects the claimant is clinically stable on medications for her lupus, has only mild lumbar spondylosis, and despite fibromyalgia pain, has neuromuscular findings [that] are generally within normal limits and improved with exercises." (*Id.*).

The ALJ gave "specific and legitimate" reasons for according "little" weight to the opinions of treating physicians, Drs. Crank and Beck. The ALJ's detailed review of the medical record (AR at pp. 28-30), in particular Plaintiff's history of testing and treatment by her rheumatologist, Dr. Carlin, and by neurology specialist, Tony Lee, M.D., clearly supports the ALJ's conclusion that Plaintiff "is clinically stable on medications for her lupus, has only mild lumbar spondylosis, and despite fibromyalgia pain, has neuromuscular findings [that] are generally within normal limits and improved with exercises." And it bears noting that in the DSHS form completed by Dr. Beck, he referred to Plaintiff having multiple visits to her rheumatologist and neurologist; he indicated that laboratory, imaging, range of motion, and other diagnostic test results were "all in the hands of the specialists" and unavailable to him for his examination of Plaintiff; and that information about any additional tests or consultations that might be needed were available through the rheumatologist and the neurologist. (AR at pp. 642-44).

Apparently, neither Dr. Carlin (the rheumatologist) or Dr. Lee (the neurologist) opined or was asked to opine about the extent of Plaintiff's physical limitations, but as the ALJ observed, Dr. Carlin noted in July 2016 that Plaintiff's lupus was "fairly mild with not a great deal of active disease on exam" and her "overall trend has been towards improvement" with a lower dose of steroid medications. (AR at pp. 29 and 542).

Dr. Platter's opinion as to Plaintiff's physical limitations was supported by other evidence in the record and consistent with that evidence. Accordingly, it constitutes substantial evidence in support of the ALJ's RFC determination. The ALJ was entitled to rely on Dr. Platter. She did not reach her RFC determination

**ORDER GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT- 9**

based on her own lay assessment of the medical record.

### B. Mental Impairments

Although Plaintiff does not specifically contest the ALJ's determination that she does not suffer from a "severe" mental impairment (no more than "mild" limitation in any area of mental functioning), Plaintiff nevertheless contends the ALJ erred in giving little weight to the opinion of Steven Olmer, Psy. D.. Plaintiff underwent psychotherapy at YNHS beginning in the latter half of 2016. It appears Plaintiff was seen primarily by a mental health therapist, Laurie X. Jones. (See e.g., AR at pp. 745-47). On March 22, 2017, Plaintiff was seen by Dr. Olmer. During this 30 minute session, he administered the Patient Health Questionnaire (PHQ-9) to the Plaintiff. Plaintiff scored a 14 indicating "moderate" depression. Mental status examination revealed Plaintiff's mood to be depressed, her affect to be flat with "slowed thinking" and impairment of attention/concentration. Otherwise, Plaintiff's perception, thought content, insight and judgment were all "within normal limits." (AR at pp. 736-744). Plaintiff resumed seeing therapist Jones in April 2017 (AR at pp. 727-32).

On the same date that he saw the Plaintiff, Dr. Olmer completed a "Mental Source Statement" form which appears to have been generated by Plaintiff's counsel. Dr. Olmer opined that Plaintiff was "moderately" and "markedly" limited in a number of respects, both cognitively and socially. (AR at pp. 607-09). He indicated Plaintiff would be off-task over 30% of a 40 hour work week and would likely miss four or more days of work per month. (AR at p. 609). Dr. Olmer indicated Plaintiff was treated by a "treatment team," but he left blank the question of whether his opinion also represented the opinion of the "treatment team." (*Id.*). The doctor wrote that Plaintiff's lupus, depression and anxiety "combine to create a substantial hindrance to her ability to perform adequately [and] consistently with basic work duties [and]

**ORDER GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT- 10**

norms." (AR at p. 610). He added that based on Plaintiff's "display of symptoms, it is unlikely she would be capable of routine daily work requirements or report to work on a dependable schedule." (*Id.*).

While the ALJ referred to Dr. Olmer as a "treating provider," it is unclear just how much he personally treated the Plaintiff and was otherwise involved in her treatment prior to March 22, 2017. The ALJ gave "little" weight to Dr. Olmer's opinion, finding "this conclusory opinion essentially consists of mere checked boxes for the functional ratings with little explanation and no evidence of clinical, objective findings to support the marked degree of severity opined." (AR at p. 32). The ALJ also noted that Plaintiff discussed the "Mental Source Statement" form with Dr. Olmer as he was completing it, that he asked her about her off-task behavior, and that he appeared to rely heavily on her reports of symptoms/limitations because of his reference to her "display of symptoms." (*Id.*). Finally, the ALJ found "[t]he opinion of marked to extreme limitations is not consistent with claimant's mental status exams and treatment/progress notes of records . . . which reflect overall findings typically within normal limits." (*Id.*).

In concluding Plaintiff did not suffer from a "severe" mental impairment, the ALJ pointed out that "the balance of the claimant's mental status screenings have been consistently within normal limits" and on several exams, the Plaintiff "exhibited/endorsed euthymic mood with full affect, as well as being within normal limits in all other mental status categories." (AR at p. 22).

The ALJ found this was consistent with the conclusion of Alexander Patterson, Psy. D., who in September 2016, performed a consultative psychological examination of the Plaintiff. During the examination, Plaintiff denied difficulty with "basic self-care" and indicated she was able to do chores around the house, but gets tired and need to take breaks frequently. Plaintiff also indicated she is able to run errands in public, but is easily fatigued. (AR at p. 603). Dr. Patterson observed no problems

**ORDER GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT- 11**

with Plaintiff's focus during their conversation and based on his mental status examination, concluded Plaintiff's "presentation was generally unremarkable." (AR at p. 605). According to the doctor:

> [Plaintiff's] reported history is consistent with recent onset depressed mood secondary to her physical health stressors. Her symptoms are a direct result of her stress and do not appear to reflect a more serious underlying psychiatric problem.
>
> The [Plaintiff] recently started taking Wellbutrin and has engaged in counseling. If she remains engaged in treatment, it is possible her symptoms will improve.

(*Id.*). Dr. Patterson concluded the Plaintiff essentially would not have any difficulties in the workplace. (AR at pp. 605-06).

Dr. Patterson's examination and assessment, as well as the other essentially normal mental examinations of record, constitute a specific and legitimate reason for giving "little" weight to the opinion of Dr. Olmer whose personal involvement in Plaintiff's treatment beyond one appointment is unclear.[3]

//
//

---

[3] Although Dr. Patterson opined Plaintiff would not have difficulty accepting supervision or interacting with coworkers and the public, the ALJ concluded the record as a whole justified finding Plaintiff has mild difficulties in social interaction and the ALJ accounted for this in her RFC determination by assessing the Plaintiff as capable of occasional, superficial contact with the public and routine contact with coworkers and supervisors. (AR at p. 23).

**ORDER GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT- 12**

**TESTIMONY RE SYMPTOMS AND LIMITATIONS**

Where, as here, the Plaintiff has produced objective medical evidence of an underlying impairment that could reasonably give rise to some degree of the symptoms alleged, and there is no affirmative evidence of malingering, the ALJ's reasons for rejecting the Plaintiff's testimony must be clear and convincing. *Burrell v. Colvin,* 775 F.3d 1133, 1137 (9th Cir. 2014); *Garrison v. Colvin*, 759 F.3d 95, 1014 (9th Cir. 2014). If an ALJ finds a claimant's subjective assessment unreliable, "the ALJ must make a credibility determination with findings sufficiently specific to permit [a reviewing] court to conclude that the ALJ did not arbitrarily discredit [the] claimant's testimony." *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002). Among other things, the ALJ may consider: 1) the claimant's reputation for truthfulness; 2) inconsistencies in the claimant's testimony or between her testimony and her conduct; 3) the claimant's daily living activities; 4) the claimant's work record; and 5) testimony from physicians or third parties concerning the nature, severity, and effect of claimant's condition. *Id*.

With regard to the Plaintiff's statements about "the intensity, persistence, and limiting effects of her symptoms," the ALJ found "the objective medical evidence and the record as a whole does not support finding a more restrictive residual functional capacity than for a limited range of light exertional work." (AR at p. 27). As noted above, the ALJ's detailed review of the medical record (AR at pp. 28-30), in particular Plaintiff's history of testing and treatment by her rheumatologist and her neurologist, supports the ALJ's conclusion that Plaintiff "is clinically stable on medications for her lupus, has only mild lumbar spondylosis, and despite fibromyalgia pain, has neuromuscular findings [that] are generally within normal limits and improved with exercises." The ALJ pointed out the treating records/progress notes of Dr. Carlin, the rheumatologist, reflecting that Plaintiff's lupus has been stable or under "fair control/improved on medications." (AR at p. 29).

**ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT- 13**

The ALJ also pointed out that instead of restricting Plaintiff's activities due to her lupus and/or chronic pain from fibromyalgia, treating providers have advised Plaintiff to engage in regular exercise as treatment for her conditions and symptoms. (AR at p. 30). Clearly, the treating providers thought Plaintiff was capable of performing these exercises and that they would benefit her.

All of the medical providers were certainly aware of Plaintiff's obesity and how that factored into Plaintiff's symptoms and limitations. Obesity was not separately included as a diagnosis by Drs. Crank and Beck, nor was fibromyalgia separately diagnosed by them, even though the ALJ found it to be a medically "severe" impairment. Finally, as noted above, Dr. Beck did not include lumbar strain as a diagnosis.

The ALJ did not reject subjective testimony solely because it was not fully supported by objective evidence. *Rollins v. Massanari*, 261 F.3d 853, 856-57 (9th Cir. 2001). This is in instance where objective medical evidence affirmatively contradicts Plaintiff's statements regarding the severity of her symptoms and claimed limitations. *Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008); *Parra v. Astrue*, 481 F.3d 742, 750 (9th Cir. 2007). And the evidence of Plaintiff's conservative treatment is sufficient to discount her testimony regarding the severity of her physical impairments. *Parra*, 481 F.3d at 751. The ALJ provided clear and convincing reasons supported by substantial evidence to discount Plaintiff's testimony regarding the severity of her symptoms and the extent of her limitations.

**LAY WITNESS STATEMENT**

Lay testimony as to a claimant's symptoms or how an impairment affects the claimant's ability to work is competent evidence that must be considered by an ALJ. *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996). In order to discount competent lay witness testimony, the ALJ "must give reasons that are germane to

each witness." *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993).

The same reasons that justified the ALJ in discounting Plaintiff's statements about the severity of her symptoms and the extent of her limitations constitute "germane" reasons for the ALJ giving "limited" weight to the statements of Plaintiff's roommate, Roxanne Coronado. As the ALJ stated:

> While the undersigned considered these statements, and finds that they support limitations to some degree, they essentially reiterate [Plaintiff's] allegations, and the statements of incapacitating symptoms are not consistent with the objective medical evidence of record . . . .

(AR at p. 33).

## CONCLUSION

"Substantial evidence" in the record supports the ALJ's RFC determination that Plaintiff can perform "light" work, subject to the non-exertional limitations found by the ALJ. The evidence of record is susceptible to more than one rational interpretation. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). The ALJ rationally interpreted the evidence and "substantial evidence"- more than a scintilla, less than a preponderance- supports her decision that Plaintiff is not disabled. The evidence does not compel a contrary determination.

Defendant's Motion For Summary Judgment (ECF No. 14) is **GRANTED** and Plaintiff's Motion For Summary Judgment (ECF No. 13) is **DENIED**. The Commissioner's decision is **AFFIRMED**.

**IT IS SO ORDERED.** The District Executive shall enter judgment accordingly, forward copies of the judgment and this order to counsel of record, and **close the case**.

**DATED** this ___5th___ day of March, 2020.

_____
LONNY R. SUKO
Senior United States District Judge

**ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT- 15**